State of Wisconsin
Dept. of Workforce Development
Equal Rights Division

**Discrimination Complaint**
**Wisconsin Fair Employment Law**

ERD Case # CR2015-00810
EEOC # 26G-2015-00622 C

HAND DELIVERY - M. DIXON
For office use only
RECEIVED
2015 MAR 24 PM 3:22
DWD
EQUAL RIGHTS DIVISION

Authorization for this form is provided under Section 111.39(1), Wisconsin Statutes.
Personal information you provide may be used for secondary purposes [Privacy Law, s. 15.04(1)(m), Wisconsin Statutes].

**READ instructions on page two FIRST then type or print in black ink.**

### 1. Complainant Information

| | |
|---|---|
| First Name | LAURA |
| Middle Initial | L |
| Last Name | ROZUMALSKI |
| Street Address/PO Box | 616 Crandall St |
| City | Madison |
| State | WI |
| Zip Code | 53711 |
| Telephone Number | (608) 358-9336 |
| E-Mail Address | laura.rozumalski@gmail.com |
| May we call the Complainant at work? | ☐ Yes  ☒ No |
| Work Telephone Number Ext. | |

### 2. Respondent Information

The **company**, agency, or union you believe discriminated against you. Name only **ONE** Respondent per form. Do **not** name an **individual person** as Respondent.

| | |
|---|---|
| Name | W. F. BAIRD & ASSOCIATES |
| Street Address/PO Box | 2981 Yarmouth Greenway Dr |
| City | Madison |
| State | WI |
| Zip Code | 53711 |
| Telephone Number | (608) 273-0592  Ext. |
| In what Wisconsin **county** did the violation take place? | Dane |

### 3. CHECK ONLY THE BOXES THAT WERE THE REASON FOR DISCRIMINATION

If you checked a box with an *, the statement in that box **must** be completed.
I believe the Respondent(s) discriminated or took action against me **because**

| | | |
|---|---|---|
| ☐ of my race * which is | ☐ of my conviction record | ☐ of polygraph testing |
| ☐ of my creed (religion) * which is | ☐ of my age (40 or older) * my date of birth is | ☐ of my military service |
| ☒ of my sex * which is **Female** | ☐ of my marital status * which is | ☐ of my use or nonuse of lawful products |
| ☐ of my pregnancy or maternity | ☐ of my sexual orientation * which is | ☐ of genetic testing |
| ☐ of my national origin/ancestry * which is | ☐ of my color * which is | ☐ of my arrest record |
| ☐ of my disability * which is | ☐ I filed a previous **discrimination complaint** with Equal Rights Enter Case Number: CR | ☒ I opposed discrimination in the workplace (**refer to directions (c)**) |
| ☐ I declined to attend a meeting or to participate in a Communication about Religious matters or political matters | | |
| ☐ I previously filed a **family/medical leave complaint** with the Equal Rights Division Enter Case Number: CR | ☐ I testified or assisted with a **discrimination complaint** filed with the Equal Rights Division Enter Case Number: CR | |
| ☐ I previously filed a **wage and hour complaint** with the Equal Rights Division Enter Case Number: LS | ☐ The employer believed that I was going to file a **wage and hour complaint** with the Equal Rights Division | |

### 4. Dates of discrimination (Required; estimate if unsure)

| Date the discrimination began? Mm/dd/yyyy | Date of the most recent discrimination? Mm/dd/yyyy |
|---|---|
| 12/13/2012 | 06/25/2014 |

ERD-4206-E (R. 11/2012)

EXHIBIT A

## 5. Statement of discrimination:

Write a brief, concise statement explaining how you were discriminated against. Give the **date** each action occurred and the **name** of the person who took the action. Explain how each action(s) was related to the box (es) you checked in section #3 on page one.

I was hired at Baird & Associates on 8/1/2010 as a Water Resources Engineer. In July of 2012, I reported to the Principal in Charge of the Madison office, Lars Barber, that I had been sexually assaulted by my supervisor, Mark Riedel, earlier that month while he and I were at a trade show. Upon investigating this assault, Baird terminated Mark on 8/3/12. Over the next few months, the Water Resources section was restructured and I was asked to be the lead of the department, but I received no additional pay for this additional responsibility. I had my performance report on 12/13/12 where Lars said I had really stepped up to the plate and had been doing a good job. He added though, with respect to the assault, that in the future I should know when it's appropriate to remove myself from situations where people are drinking. I feel this comment was blaming me for my assault and that Lars would not have made that comment if I were a male.

Things went relatively well for the following year. There were a few harassing statements that were made when I refused to engage in business development activities with Mark Riedel in his position at a different company, but for the most part work was good and I was really enjoying the challenge of my new role in the company. I received positive feedback from my coworkers and clients. One of the projects I was Project Manager on received a very good rating from the client, numerous clients commented on how quickly I responded to their needs and what a pleasure I was to work with. I was representing the company at various conferences and was published in a trade journal for the 'cutting-edge' engineering work I was doing at Baird. I was rewarded for my good performance in September 2013 with a private share offer to buy more of a holding in the company.

Things changed in December 2013. My supervisor, Alex Brunton, came to town from Toronto the week of December 9th. Prior to his arrival, we had discussed my upcoming performance review and he said he was looking forward to it. He told me, "Nothing to worry about. All good things." But, what he said during the performance review on December 10, 2013, which Lars Barber also attended, was much different than that and contrary to earlier feedback. He criticized me on numerous fronts and pointed out various areas for improvement.

[Statement continued on page attached to end of this form]

## 6. Certification and Signature

By my signature below, I certify that I have read the above complaint, and, under penalties of law, I declare that this complaint is true and correct to the best of my knowledge and belief.

| Signature of Complainant or authorized representative | Date signed |
|---|---|
| *[signature]* | 3/23/15 |

Please complete Equal Rights Process Information Sheet on Page 4

**[Statement continued from page 3 of form]**

I was quite shocked by what he said and how different it was from what he had been telling throughout the previous months we had been working together. Over the course of the following months, Alex began to treat me much differently. He continued to criticize my work and made it very difficult for me to perform my job to the level that I had been by cutting me out off from essential communications. He would not include me on conference calls and he would add me or subtract me to meeting invites last minute - making me look bad in front of coworkers and withheld necessary information. His behavior toward me had changed so much that I began to suspect Mark had told him something derogatory about me that altered his opinion of me. This feeling of unease and suspect led me to look at Alex's work calendar to see if something had happened while he was in town that caused his actions toward me to change so abruptly and I found that he had breakfast with Mark the very same day as my performance review.

I refused to sign the poor performance evaluation because I found it inconsistent with the feedback I had received. This led to a series of meetings over a course of months and I eventually told Lars that I believed Alex was doing this because of something Mark had told him relating to the assault. Lars asked me to write him a letter explaining my thoughts on the matter and I did. Lars later stepped down from handling the matter and turned the issue over to Jeff Bellile in March 2014. Another series of meetings took place while Jeff investigated the matter. I presented him with the positive feedback emails I had received prior to my review and my feeling that this bad review was based on the fact that I had reported sexual assault in the workplace. After consulting with Alex, Jeff dismissed my perspective on the situation and placed me on a performance improvement plan wherein Alex was the primary reviewer: he determined if I was meeting the technical goals or not. Alex gave me menial tasks to do, such as renaming file names - not engineering related tasks. I believe I was placed on the 'improvement plan' as retaliation for my earlier report of harassment and its result (termination of M. Riedel a friend of Alex's).

Despite regular feedback that I was meeting all the requirements of the improvement plan, I was terminated on 6/25/2014. Jeff told me it was because I took a late lunch (no others had specific lunch hours set) and no one knew where I was at, but I believe strongly it was due to the fact that I had reported harassment in the workplace.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Milwaukee Area Office**

310 West Wisconsin Avenue, Suite 800
Milwaukee, WI 53203-2292
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Milwaukee Status Line: (866) 408-8075
Milwaukee Direct Dial: (414) 297-1112
TTY (414) 297-1115
FAX (414) 297-4133 & 3146
Website: www.eeoc.gov

## NOTICE TO RESPONDENT

**YOUR CHARGE OF EMPLOYMENT DISCRIMINATION HAS BEEN DUAL-FILED WITH THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (EEOC).**

While EEOC has jurisdiction to investigate this charge (upon expiration of any deferral requirement if this is a charge filed pursuant to Title VII of the Civil Rights Act of 1964, as amended (Title VII), the Americans with Disabilities Act (ADA), as amended or the Genetic Information Non-discrimination Act (GINA), EEOC may suspend its investigation and await the issuance of the Wisconsin Equal Rights Division's (ERD's) final findings and orders. These findings and orders will be given weight by EEOC in making its own determination as to whether reasonable cause exists to believe that discrimination has occurred.

You are therefore encouraged to cooperate fully with the ERD. All facts and evidence provided by you to the Agency will be considered by EEOC when it reviews the Agency's final findings and orders. In many cases EEOC will take no further action, thereby avoiding the necessity of an investigation by both the Agency and EEOC. This likelihood is increased by your active cooperation with the Agency.

As a party to the charge, you may request that EEOC review the final findings and orders of the ERD. For such a request to be honored, you must notify EEOC in writing within 15 days of your receipt of the Agency's final decision and order. If the Agency terminates its proceedings without issuing a final finding and order, you will be contacted further by EEOC.

Regardless of whether the ERD or EEOC processes the charge, the Recordkeeping and Non-Retaliation provisions of the statutes apply. EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the Equal Pay Act (EPA); and 29 CFR Part 1627, for the Age Discrimination in Employment Act (ADEA). These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are as described in Sec. 1602.14. Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

Federal laws enforced by EEOC provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes.